UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BOBBY Y. WALLACE, JR., #314373          CIVIL ACTION NO. 15-cv-2823

VERSUS                                  JUDGE FOOTE

N. BURL CAIN                            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

A Caddo Parish jury, by a vote of 10 to 2, convicted Bobby Wallace, Jr. ("Petitioner") of possession of more than 28 grams but less than 200 grams of cocaine. The jury acquitted Petitioner of a charge of illegal use of weapons. Petitioner was adjudicated a third felony habitual offender and sentenced to life imprisonment. His conviction and sentence were affirmed on appeal. State v. Wallace, 71 So.3d 1142 (La. App. 2d Cir. 2011), writ denied, 79 So.3d 1026 (La. 2012). Petitioner also pursued a post-conviction application in the state courts. He now seeks federal habeas corpus relief on several grounds. For the reasons that follow, it is recommended that his petition be denied.

### Timeliness

The state argues that the petition is untimely. The one-year limitations period to file a federal petition was tolled, with more than 60 days remaining, when Petitioner filed his post-conviction application. The state trial court denied that application in May 2013, after which state law allowed Petitioner 30 days to seek a writ from the appellate court.

Petitioner did not take any action until more than one year later, in August 2014, when he filed a notice of intent to seek review before the state appellate court and asked the trial court to set an extended return date. Petitioner represented that his late action was because he had not received a copy of the trial court's ruling until August 18, 2014. The trial court judge granted the extension.

Petitioner thereafter proceeded on a timely basis in the state courts, and he filed his federal petition about 30 days after the Supreme Court of Louisiana denied a writ application on his post-conviction application. His petition is untimely if his lack of timely action after the trial court's ruling is deemed to have ceased the tolling effect during the several months of inactivity that followed.

The tolling effect of a post-conviction application ordinarily ceases 30 days after a trial court's denial unless the prisoner files a timely application for review with the appellate court. Melancon v. Kaylo, 259 F.3d 401 (5th Cir. 2001). Petitioner did not do that, and more than the one-year limitation period expired before he renewed the process. In this case, however, the prisoner made an uncontested claim of lack of timely notice of the trial court's decision, and the state court granted an extension of the period to seek appellate relief. Tr. 1293-97. The granting of such an extension may, under certain circumstances, effectively keep the post-conviction application pending and thus continue to toll the federal limitations period. Grillette v. Warden, 372 F.3d 765 (5th Cir. 2004). The undersigned does not necessarily find that the federal petition is timely, but the timeliness defense is less than certain. The better course of action under the circumstances is to address the merits of the petition.

**Sufficiency of the Evidence**

**A. The Evidence**

Marcus Thomas testified that he had been a member of a Shreveport street gang, but he left the gang lifestyle after he was released from a prison sentence. He nonetheless remained acquainted with many gang members, and some members of his family were in gangs. Bad blood developed between Thomas and certain gang members when he refused to "take a charge" for a first cousin of Petitioner.

Thomas, his girlfriend, and her daughter went to a convenience store in Shreveport, where they encountered Greg Young. Thomas and Young had an argument. As Thomas and his guests later drove down David Raines Road, several gunshots hit his SUV. No one was hit. Thomas told police the names of three men who were the shooters. One of them was Petitioner. Thomas also told police that Petitioner and the other two men lived on Hattie Street.

The police soon executed a search warrant for the Hattie Street house. They found Petitioner and four others inside. Police recovered a plastic baggy of 31 grams of powder cocaine from under the cushions of the couch in the front room. There were no fingerprints on the baggy. A kitchen cabinet contained small sandwich bags, an open box of baking soda, and a Glock .40-caliber handgun. Spent casings found at the scene of the shooting matched the handgun. An SKS rifle was found in a car parked at the house.

Police found in the kitchen a digital scale of a type commonly used for weighing drugs for resale. Petitioner's fingerprint was on the scale. Three agents testified that they overheard Petitioner and one of the suspected shooters telling Kendra Young to take the

charge by claiming that the drugs and gun belonged to her.  Ms. Young initially told police that everything belonged to her, but when cautioned that other crimes may go along with ownership of the gun, she changed her story to say that the items belonged to Calvin Elie.

Police had found Calvin Elie hiding in a closet.  He pleaded guilty to possession of cocaine and received probation on the condition that he testify truthfully.  He testified that he did not live at the residence but had been asleep in the back bedroom and jumped in a closet when he heard the police enter the house.  He denied knowledge of the cocaine found on the sofa.  Petitioner and his co-defendant Glenn Young testified that Elie was a drug addict who was staying at the house and slept on the sofa where the drugs were found.

Petitioner testified that he lived on Victor Street and worked, on and off, for his uncle.  He said he had been at his uncle's girlfriend's house at the time of the shooting.  He admitted to being in a gang when he was younger, and that he had convictions for manslaughter and possession of marijuana, but he claimed to have straightened out his life.

Petitioner said that he had been at the Hattie Street home at the time of the raid only because, earlier that morning, Kendra Young had called and asked him to take one of her children to Head Start.  He said that Kendra knew he would be up early because he walks his sister to her bus stop most mornings.  When he arrived at the Hattie Street house, Kendra was still getting her daughter ready for school, and the other residents were asleep.

Petitioner said that he was in the back of the house when police arrived.  Calvin Elie was asleep on the couch but ran down the hall and hid in a closet.  Petitioner said that Elie was a drug addict who stayed at the house because his family had run him off because of his drug problem.

Petitioner was asked about the scale that bore his fingerprint. He testified that his cousin had been at his grandmother's house a few days earlier and had some bags. Petitioner asked his cousin what was in the bags, and the cousin explained that he found some scales that he was about to sell. Petitioner said that he told his cousin that he did not need to have those, and he tried to snatch them from him. Petitioner said that he was always badgering his younger cousin, who was about 22, about drinking or other bad behavior. Petitioner said that he was going to take the scales and "throw them away, bust them, or whatever," but his cousin insisted that he was about to sell them, so Petitioner relented and let him have them back.

Marquae Wallace, the younger cousin, testified that Petitioner had touched the scale the day before the warrant was executed. Marquae said that he later met Elie, who had a bag of powder cocaine that was the same bag seized from the house, and Marquae left the scales on the kitchen counter at the Hattie Street house.

**B. Elements of the Crime**

Petitioner was convicted of possession of cocaine. The State was required to prove that he was in possession of the illegal drug and that he knowingly possessed it. The State did not have to prove actual physical possession. Constructive possession is sufficient to support a conviction under state law. State v. Foster, 3 So.3d 595, 600-01 (La. App. 2d Cir. 2009).

Constructive possession means having a relationship with an object such that it is subject to one's dominion and control, with knowledge of its presence. Louisiana courts look to several factors in determining whether a defendant exercised sufficient control and

dominion to establish constructive possession. They include (1) his knowledge that drugs were in the area, (2) his relationship with the person, if any, found to be in actual possession, (3) his access to the area where the drugs were found, (4) evidence of recent drug consumption, and (5) his physical proximity to drugs. State v. Major, 888 So.2d 798, 802 (La. 2004). Giving a false name or other efforts to attempt to avoid blame indicate consciousness of guilt and is a circumstance from which a jury may infer guilt. State v. Toups, 833 So.2d 910, 914 (La. 2002).

### C. Jackson and Section 2254(d)

Petitioner argues that the evidence was not sufficient to prove his guilt under applicable state law. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993). And "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

The state courts decided the Jackson claim on the merits on direct appeal. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by

the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  Thus, a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard.  It may not be overturned on federal habeas review unless the decision was an objectively unreasonable application of the deferential Jackson standard.  Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

### D. Analysis

The state appellate court reviewed the evidence in detail.  It noted that the jury was faced with an array of often contradictory testimony about the relevant factors.  The bag of drugs did not bear any fingerprints, but it was under a couch in the main room where it was easily accessible by anyone.  There was testimony that Calvin Elie was sleeping on the couch when police arrived, but he denied being there.  The court reasoned that the jury, who saw Mr. Elie testify, could have concluded that it was unlikely that the seldom employed and homeless Elie was the only person with a connection to a rather significant quantity of cocaine.

The court also noted that Petitioner's fingerprint was found on the digital scale, which was located near the gun, plastic bags, and baking soda.  His explanation about how his fingerprint came to be on the scale was deemed dubious.  There was also the evidence that Petitioner asked Kendra Young to "take the charges," which was suggestive of guilt on his part.

The state court applied the <u>Jackson</u> standard to these facts and determined that, when the evidence was viewed in the light most favorable to the prosecution, the evidence was sufficient to prove beyond a reasonable doubt that Petitioner was in constructive possession of the cocaine. The case was not a slam dunk for the prosecution, but there was evidence that Petitioner and other members of the household were involved in a shooting, and his fingerprint was on a scale located near other drug paraphernalia. This and the other relevant facts were sufficient that the state court's application of <u>Jackson</u> to affirm the conviction was not an objectively unreasonable application of that standard. Reasonable minds could perhaps differ on whether the evidence was sufficient when <u>Jackson</u> was applied on direct appeal, but once that decision was made by the state court, it was adequate to withstand habeas challenge.

**Excessive Sentence**

Petitioner was adjudicated a third felony offender and received a mandatory life sentence. The Louisiana Supreme Court held in <u>State v. Dorthey</u>, 623 So.2d 1276 (La. 1993) that if a trial judge finds that the punishment mandated by the habitual offender statute is grossly out of proportion to the severity of the crime, the judge may reduce the sentence to one that would not be constitutionally excessive. Petitioner argued on direct appeal that the trial court erred in not departing downward from his life sentence.

The appellate court found that the record was sufficient to conclude that the life sentence was not excessive. Petitioner was on probation at the time he was arrested, yet he was associating with a known crack addict. He asked Kendra Young to take the fall for the charges, and his testimony at trial was not credible. The court found that his sort of

conduct did not suggest that a downward departure was warranted.  State v. Wallace, 71 So.3d at 1151-52.

Petitioner's argument to this court invokes Article I, Section 20 of the Louisiana Constitution, Dorthey, and other state law.  The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011).  Habeas relief is not available even if Petitioner is correct on his state law arguments.

To the extent Petitioner may have exhausted and presented a federal challenge to his sentence, it lacks merit.  The Court in Lockyer v. Andrade, 123 S.Ct. 1166 (2003) reviewed its decisions and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by felony petty-theft after he stole approximately $150 worth of videotapes. The sentence did not permit habeas relief because it was not contrary to or an unreasonable application of clearly established gross disproportionality principle set forth in Supreme Court holdings. The Court admitted that its precedents in the area were not clear, which makes it difficult to obtain habeas relief under the deferential Section 2254(d) standard.

The state court determined that Petitioner's sentence was not grossly disproportionate to the crime in light of his criminal history, probation status, and other relevant factors.  As in Lockyer, the state court's rejection of the sentencing challenge was not contrary to, or an unreasonable application of, any clearly established Supreme Court precedent.  Habeas relief is not permitted on this claim.

**Lack of Written Reasons**

Petitioner argues that the trial court failed to comply with La. R.S. 15:529.1(D)(3), which requires that the court provide written reasons for its determination that an offender is an habitual offender. Petitioner raised this claim on direct appeal. The appellate court found that the error was harmless because the transcripts of the habitual offender hearing showed clear oral reasons. State v. Wallace, 71 So.3d at 1153.

This claim is based solely on state law so lacks habeas merit. A claim that the trial court improperly applied state law does not constitute an independent basis for federal habeas relief. Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991). And the Fifth Circuit has rejected habeas challenges to a state court's failure to comply with similar state law sentencing rules. Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987); Butler v. Cain, 327 Fed. Appx. 455 (5th Cir. 2009).

**Ineffective Assistance of Counsel**

**A. Introduction; Burden**

Petitioner argues that his attorney rendered ineffective assistance in several ways. To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the

determination was unreasonable, which is a substantially higher threshold. <u>Schriro v. Landrigan</u>, 127 S.Ct. 1933, 1939 (2007). The <u>Strickland</u> standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009).

### B. Failure to Challenge Search Warrant

Detective Lane Smith applied for a warrant to search the home at 2997 Hattie Street for a .40 caliber handgun and ammunition. His affidavit in support of the warrant application stated that officers met with Marcus Thomas, who reported being shot at by three known suspects. Thomas named two of the men, including Petitioner, and said that he knew the third suspect but could not recall his full name at the time. Officers went to the scene of the shooting, found .40 caliber spent shell casings on the sidewalk, and saw that Thomas' vehicle had been struck by several shots. Detective Smith recounted that he conducted a detailed interview with Thomas a few days later, where Thomas named all three suspects. Thomas said that he had known the three men all of his life, and he identified photographs of them. Thomas told Smith that the suspects believed that Thomas had cooperated with the police in another case. Thomas said the suspects ran to 2997 Hattie after firing the shots, and he said Petitioner and another of the suspects then lived at or frequented the Hattie Street address. Thomas said that a source told him that the two men had .40 caliber handguns. The officers had Thomas physically point to the Hattie Street home, which they then verified had water service billed to a Kendra Young, who Thomas had described as the sister of one of the suspects. Based on that affidavit, a state court

judge signed a warrant to search the home for a .40 caliber handgun and ammunition.  Tr. 51-53.

Petitioner argues that his defense counsel was ineffective because he did not file a motion to suppress the results of the search on the grounds that the affidavit contained false statements and did not give rise to probable cause.  "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007).

Affidavits used to support a search warrant are presumed valid.  Franks v. Delaware, 98 S.Ct. 2674 (1978).  The veracity of the affidavit may only be attacked upon a showing of deliberate falsehood or reckless disregard for the truth by the affiant.  Id.  If a defendant establishes by a preponderance of the evidence that false information was intentionally or recklessly included in an affidavit, the court must excise the offensive language and determine whether the remaining portion would have established the necessary probable cause.  U.S. v. Danhach, 815 F.3d 228, 235 (5th Cir. 2016), citing Franks.

Petitioner presented this claim in his post-conviction application.  Tr. 1183-92.  He argued that the affidavit contained false and misleading information because Thomas had first told police there were only two suspects who shot at him, then he said there was a third that he did not get a look at, and he later specifically identified the three shooters plus

another man.  Petitioner argued that Thomas' various versions of the events undermined his credibility.  He also argued that Detective Smith should have considered Thomas' allegation that Petitioner lived in the Hattie Street home unreliable because Thomas told an officer that he did not know Petitioner's address, said the suspects went in an unknown direction, and Petitioner later testified at trial that he actually lived on Victor Street.  Finally, Petitioner argues that Detective Smith should not have relied on Thomas' statement that an unnamed source said that two of the suspected shooters had .40 caliber handguns.

The trial court issued a brief opinion that stated Petitioner asserted ineffective assistance claims.  The court concluded that, under Strickland, Petitioner failed to overcome the presumption that his counsel exercised reasonable professional judgment and "has failed to meet his burden regarding ineffective assistance of counsel."  The court added that counsel had succeeded in getting Petitioner acquitted of illegal use of weapons. Tr. 1292.

The appellate court denied a writ application "on the showing made."  Tr. 1464. The Supreme Court of Louisiana denied a writ application in a short per curiam that stated, relevant to the ineffective assistance claims, that Petitioner "fails to show he received ineffective assistance of counsel under the standard of Strickland[.]"  Tr. 1648-49.

As noted above, Petitioner's claim is subject to the deferential standards of Section 2254(d).  Under that standard, it is not enough for the state court to have been incorrect in its application of state law or determination of facts; it must also have been unreasonable. Coble v. Quarterman, 496 F.3d 430, 435 (5th Cir. 2007).  And "Section 2254(d) applies

even where there has been a summary denial." <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1402 (2011).  A petitioner who challenges a state court's summary denial may meet his burden under the first prong of Section 2254(d) only by showing that there was "no reasonable basis" for the state court's decision.  The federal habeas court must determine what arguments or theories could have supported the summary decision, and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  <u>Pinholster</u>, 131 S.Ct. at 1402, citing <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011).

Petitioner has not met his burden.  The affidavit by Detective Smith was detailed and noted variations or uncertainties in the information obtained from the witness.  There is no indication that Detective Smith set forth any deliberate falsehoods or acted with reckless disregard for the truth.  Petitioner's various arguments about why Mr. Thomas was an unreliable witness do not make Detective Smith's testimony false.  Petitioner has not shown that he had a meritorious Fourth Amendment claim that would have resulted in the suppression of the evidence seized pursuant to the warrant.  Moreover, he has not demonstrated that the state courts' rejection of this claim was an objectively unreasonable application of <u>Strickland</u> or <u>Kimmelman</u>.

### C. Special Response Team

Two of the officers involved in the search testified about the use of a Special Response Team ("SRT") to enter the home.  Petitioner argues that counsel was ineffective for failing to object to this testimony, the trial court erred in admitting the evidence, and there was related prosecutorial misconduct.  All of the claims lack merit.

Agent David Recchia with the Shreveport Police Department testified that he is involved in narcotics investigations and was assisting the narcotics unit serve a search warrant on the Hattie Street home.  Recchia said that detectives "had information that there was narcotics within that residence," so they "made entry using an SRT team to make a forceful entry to the residence."  Tr. 642-43.  The prosecutor asked about the purpose of the SRT.  Recchia explained that many times drug operations are associated with a "chance for, propensity for violence."  He said, "There are usually guns involved with dope."  The team is "vested up" and uses heavy gear to make entry and secure the residence.  Once the SRT has cleared the house, they allow the investigators to enter and conduct the search and interviews.  Recchia said this form of entry was both for the safety of officers as well as to prevent destruction of evidence.  Tr. 643-44.

Agent Chad Denham testified that he also served on the SRT or SWAT team. Denham said he was assigned to the entry team for the search of the Hattie Street home. There were 16 members of the SRT, dressed in vests, helmets, masks, and armed with "very big guns" and a ballistic shield.  Tr. 649-52.

Defense counsel Larry English did not object to Agent Recchia's testimony, but he did object at this point during Agent Denham's testimony that the description was not relevant to whether the drugs and guns found in the home were possessed by the two defendants.  The prosecutor responded that he thought it was important knowledge for the jurors to have, and the court summarily overruled English's objection.  The testimony regarding the ballistic shield, the caliber of the police weapons, the use of a distraction device, and other matters were described.  Tr. 652-56.

Petitioner argues that counsel was ineffective for not objecting, but counsel did eventually object and was overruled.  The court cannot find counsel ineffective merely because he did not succeed on his objection.  Bustos v. Quarterman, 2007 WL 701028, *5 (W.D. Tex. 2007) ("The mere fact that counsel did not prevail on his motion to suppress does not render his performance deficient.").

Petitioner argues that the trial judge erred in allowing the testimony.  A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling violates a specific federal constitutional right or is so egregious such that it renders the petitioner's trial fundamentally unfair.  Brown v. Epps, 686 F.3d 281, 286 n. 20 (5th Cir. 2012); Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000).  The evidence at issue was of questionable relevance, but its admission was not so unfair as to meet the heavy burden required for habeas relief.

Finally, Petitioner argues that the prosecutor engaged in misconduct by pursuing this line of evidence.  Claims of prosecutorial misconduct do not provide a basis for habeas relief unless the prosecutor's actions or argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 106 S.Ct. 2464, 2471 (1986).  The petitioner must also demonstrate prejudice by showing that the misconduct was so persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks.  Geiger v. Cain, 540 F.3d 303, 308 (5th Cir. 2008); Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988).  The questions at issue were not an important part of the state's prosecution, and there was no argument that the testimony about the SRT entry supported a finding of

guilt.  There is little reason to believe that the verdict would have been different had this testimony not been presented.  Accordingly, the state court's denial of this claim was not an objectively unreasonable application of clearly established federal law.

### D. Jury Instruction on Accomplice Testimony

Calvin Elie, who was arrested in the house, entered a guilty plea, received probation, and agreed to testify truthfully at this trial.  Mr. Elie testified that he did not live at 2997 Hattie Street; he lived with his grandmother at another house on the street.  Elie denied that he used drugs and said that he had come over to the house only a couple of hours before the raid.  He denied possessing the drugs that were found, but he admitted that he entered a plea of guilty after spending over ten months in jail.  Elie denied any involvement in the shooting, and he said he did not know whether the persons in the Hattie Street house were involved in drugs.  He did say that he heard Glenn Young, one of the occupants, mention that he needed to get a Reggie.  Elie explained that a Reggie was 31 grams of cocaine, a reference to the jersey number of former NBA player Reggie Miller.  But Elie did not offer any testimony that directly implicated Petitioner as a possessor of the drugs that were found, nor did Elie say that Petitioner was involved with drugs in general.  Tr. 621-42.

In Louisiana, a conviction may be sustained on the uncorroborated testimony of an accomplice, although the jury should be instructed to treat such testimony with great caution.  State v. Hollins, 15 So.3d 69, 71 (La. 2009).  A cautionary accomplice instruction is not required if there is material corroboration of the accomplice's testimony.  Id. at 71-72.  Petitioner argues that his attorney was ineffective because he did not request such an instruction.

The state court acted reasonably in denying this claim. There was nothing in Elie's testimony that incriminated Petitioner with respect to the drug possession count. Rather, he said that he did not know whether the people in the house were involved in drugs. Accordingly, there was no reason for defense counsel to ask for an instruction that Elie's testimony be treated with caution. The mere absence of a jury instruction does not overcome the strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment. Thomas v. Vannoy, 651 Fed. Appx. 298, 303 (5th Cir. 2016). There is no reason to believe that the verdict might have been different had the court given such an instruction. This claim lacks merit.

### E. Failure to Note Race and Gender of Jurors

The record includes a transcript of the voir dire that took place over two days. Tr. 239-471. Both sides used peremptory strikes, and the discussions regarding the strikes and challenges for cause were transcribed on the record. Petitioner argues that defense counsel was ineffective because he did not ensure that the record stated the race and gender of all prospective jurors and then lodge (unspecified) Batson objections.

The record often contains a recitation by the trial judge or a written document that sets forth the race and gender of the jury venire. The State does not point to any such evidence in this record. However, Petitioner offers only a conclusory assertion that a valid Batson objection could have been raised. Defense counsel Larry English, who is African American, does not have a reputation as one who would have been shy about raising such an objection. Had that happened, it is certain that the race or gender of the relevant jurors would have been mentioned. But no objection was made, so the record was not completed

in that regard.  Petitioner's conclusory assertion that a <u>Batson</u> claim could be raised had counsel noted the race and gender of jurors is speculative and conclusory.  This court cannot say that the state court was objectively unreasonable when it rejected this <u>Strickland</u> claim.

### F. Bench Conferences

The Supreme Court of Louisiana has held that, as a matter of state criminal procedural law, bench conferences are a material part of the proceedings.  If there are potential grounds to appeal based on how challenges were ruled upon at the bench, the absence of a transcript or other contemporaneous records to account for the selection process requires reversal.  <u>State v. Pinion</u>, 968 So.2d 131 (La. 2007).  Petitioner argues that <u>Pinion</u> and related state rules and statutes were violated when there were at least 13 unrecorded bench conferences during the course of his trial.  He argues that he has no way of reviewing what was said, so he was unable to assign as error any unfavorable rulings made during those bench conferences.

This court may not grant habeas relief based on violations of <u>Pinion</u> or other state law.  Federal habeas corpus relief is available only for errors of federal constitutional law. <u>Estelle v. McGuire</u>, 112 S.Ct. 475 (1991).  Furthermore, the Supreme Court has not required the State to provide a full transcript based on mere request.  <u>Draper v. State of Washington</u>, 83 S.Ct. 774 (1963).  Only those parts that are germane to consideration of an appeal must be provided.  This means a defendant must allege a specific error that can be uncovered through production of portions of the voir dire transcript not included in the record.  The State is not required to provide complete transcripts so that a defendant may

conduct a fishing expedition to seek out possible errors for appeal.  Johnson v. Cooper, 2013 WL 4548526, *7 (E.D. La. 2013), citing Kunkle v. Dretke, 352 F.3d 980, 985-86 (5th Cir. 2003).

Petitioner has not articulated any particular appellate issue that could have been fleshed out by obtaining a transcript of a bench conference.  He has not pointed to any places in the record that suggest any actual rulings were made at such conferences.  Habeas relief is not available on this claim.  This court has previously rejected similar claims.  See, e.g., Hedgespeth v. Warden, 2015 WL 1089325, *6 (W.D. La. 2015); Greer v. Warden, 2014 WL 4387295, *9 (W.D. La. 2014).

### G. No Motion for Mistrial

Agent Denham was asked to identify a photograph.  He said it "looks like a black scale and a small amount of suspected marijuana on it."  Tr. 661.  Defense counsel objected that his clients were not on trial for marijuana, so the references to that substance had no probative value.  The prosecutor responded that all defendants were arrested for the misdemeanor possession of marijuana, but the misdemeanor could not be tried in the jury trial for the felony charges.  He argued that the discovery of the marijuana was part of the res gestae and that having other drugs in the house was indicative of knowing or intentional possession of the cocaine.  The trial judge sustained the objection.  Tr. 662-67.

The next witness was Agent Troy Skeesick.  He was asked about some keys he found in the house.  He answered, "Yes.  I actually found some keys on that shelf along with a small amount of marijuana."  Counsel objected and asked that the prosecutor instruct all future witnesses not to mention the marijuana.  The court observed that Skeesick had

not been present when the earlier ruling was made, nor had the prosecutor had enough time to instruct the witnesses not to mention the marijuana.  Furthermore, Skeesick's response was not directly responsive to the prosecutor's question.  The court asked counsel if he wished the court to admonish the jury on the issue.  Counsel elected to move on rather than emphasize the marijuana further.  Tr. 670-78.

Defense counsel later questioned Petitioner and his co-defendant about their knowledge of the "drugs" found in the house.  Both denied knowledge of drugs in the home.  Tr. 747, 779.  When the prosecutor cross-examined the co-defendant about his knowledge of drug activity in the house, he first asked him if he knew about cocaine underneath the sofa cushion.  The prosecutor then asked whether he knew "about any marijuana in the house."  Tr. 759-60.  The prosecutor cross-examined Petitioner about the coincidence of his print being on a scale that was found by the keys to the vehicle in which an assault rifle was found, as well as beside the .40 caliber Glock used in the shooting.  The prosecutor mentioned in that question that the keys and the pistol were "also where the marijuana and the scales were" in a cabinet.  Tr. 804.  Defense counsel did not object to those questions.

Petitioner seeks to have his conviction thrown out on habeas review because counsel did not raise those additional objections.  "It is oft-recognized that the decision not to seek a mistrial is frequently a strategic one."  Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008).  Counsel must balance the harm caused by the prosecutor's improper question against the possibility that a new trial would present worse prospects for his client.  Id., citing Ward v. Dretke, 420 F.3d 479, 491 (5th Cir. 2005).  The same principles apply to decisions whether

to object or seek admonishments or cautionary instructions.  Counsel often make a strategic decision to let some matters go rather than draw additional attention to them.

The state court's decision to deny relief on the Strickland claim was within the realm of a reasonable application of Strickland to the facts.  Counsel fought hard to keep out evidence of the marijuana, and he largely succeeded once his objections were made.  He did not object to the later minor references, but that may have been a matter of strategy or an implied recognition that he had opened the door by having his clients deny knowledge of "drugs" in the house.  There is also no reasonable likelihood that the verdict would have been different had counsel raised an objection to those questions.  Habeas relief is not permitted on this claim.

### H. No Motion to Quash

Petitioner was originally charged by a written bill of information which, after amendment, charged him with the cocaine possession.  The state announced on the day jury selection began that it had filed an amended bill that also charged Petitioner with illegal use of a weapon. Tr. 242.  Petitioner argues that counsel should have filed a motion to quash that charge because no written amended bill of information was presented to the defense.  The State does not cite to the amended bill in the record.

Petitioner was acquitted of the weapons charge.  He argues that he was nonetheless prejudiced because the defense was ambushed with this new charge and, had it been quashed, he may have also been acquitted of the drug charge.  This argument is entirely speculative.  The state court's denial of the Strickland claim was not objectively unreasonable.  Accordingly, habeas relief is not permitted on this final claim.

Accordingly,

It is recommended that Petitioner's Petition for Writ of Habeas Corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14)

days from the date of this Report and Recommendation, file a memorandum that sets forth

arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of November,

2018.

Mark L. Hornsby
U.S. Magistrate Judge